**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosemary Loera,<br><br>            Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Commissioner of the<br>Social Security Administration,<br><br>            Defendant. | CIV 12-2449-PHX-MHB<br><br>**ORDER** |

Pending before the Court is Plaintiff Rosemary Loera's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On October 16, 2008, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning November 1, 2007. (Transcript of Administrative Record ("Tr.") at 18, 225-38.) Her applications were denied initially (Tr. at 88-91), on reconsideration (Tr. at 101-07), and after an administrative hearing (Tr. at 39-83), by an ALJ on June 10, 2011 (Tr. at 15-34). The Appeals Council denied Plaintiff's request for review (Tr. at 1-7), thereby rendering the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

\\\

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2007 – her alleged onset date. (Tr. at 20.) At step two, she found that Plaintiff had the following severe impairment: status post epidural abscess/burst fracture with laminectomy; diabetes mellitus; hepatitis C; and in 2010, bilateral carpal tunnel syndrome. (Tr. at 20-22.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 22-23.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl; and should never climb ladders, ropes, or scaffolds. She is limited to frequent handling and precluded from forceful gripping or grasping. The claimant would require a sit/stand option at will."[1] (Tr. at 23-26.) The ALJ determined that Plaintiff was unable to perform any past relevant work, but based on her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. at 26-28.) Therefore, the ALJ concluded

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

1 that Plaintiff has not been under a disability from November 1, 2007, through the date of her
2 decision. (Tr. at 28.)

### IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider her subjective complaints; (2) failing to properly assess the psychological impairment and the effect it has on her ability to work; and (3) failing to provide a function-by-function assessment of the residual functional capacity and accepting testimony from the vocational expert stating that Plaintiff could perform the positions of cashier, assembly worker, and quality control inspector.[2] Plaintiff requests that the Court vacate the decision of the ALJ and remand for a determination of benefits.

**A.     Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.

---

[2] The Court notes that some of the arguments set forth in Plaintiff's brief are, at times, unclear and located in footnotes or as secondary arguments without a heading and within the text of her brief.

- 4 -

2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495 F.3d 624, 637-39 (9th Cir. 2007).[3] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

At the April 2011 administrative hearing, Plaintiff testified to pain in her lower hip and right leg. (Tr. at 53.) She estimated she could stand for 20 minutes, sit for 30 minutes, lift less than 10 pounds, and had difficulty with her grip and grasp. (Tr. at 56, 61.) Plaintiff said her pain was a nine on a 10-point pain scale on an active day, and six on days she was inactive. (Tr. at 63.) She did not have any significant complications from diabetes (Tr. at 58), and her kidney and bacterial infections had resolved (Tr. at 60). Plaintiff also reported having two or three panic attacks per month (on medication). (Tr. at 47-48.) She testified to short-term memory problems, guilt, and frequent fatigue. (Tr. at 48-49, 61.) Plaintiff also described her daily activities. She said she could dress herself and wash dishes, but that

---

[3] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

1 standing hurt her back. (Tr. at 53.) Plaintiff said she helped out with her grandchildren (all
2 ages eight and under), and confirmed she tried to get custody of them at one point. (Tr. at
3 64-65.) Plaintiff said she always made sure the kids were up and did what she could at the
4 house, such as helping with groceries and laundry, but that her daughters did most chores.
5 (Tr. at 67-70.)

6 Having reviewed the record along with the ALJ's credibility analysis, the Court finds
7 that the ALJ made extensive credibility findings and identified several clear and convincing
8 reasons supported by the record for discounting Plaintiff's statements regarding her pain and
9 limitations. Although the ALJ recognized that Plaintiff's medically determinable
10 impairments could reasonably be expected to cause the alleged symptoms, she also found that
11 Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
12 symptoms were not fully credible. (Tr. at 23-26.)

13 In her evaluation of Plaintiff's testimony, the ALJ first referenced Plaintiff's daily
14 activities. (Tr. at 25.) "[I]f the claimant engages in numerous daily activities involving skills
15 that could be transferred to the workplace, an adjudicator may discredit the claimant's
16 allegations upon making specific findings relating to the claimant's daily activities." Bunnell
17 v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v.
18 Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (claimant's activities suggested a greater
19 functional capacity than alleged). Specifically, referencing Plaintiff's application documents,
20 the ALJ found that Plaintiff reported (and testified to) caring for small children, performing
21 housework, going for walks, going on appointments, attending weekly church services, and
22 caring for her father. (Tr. at 25, 256-63, 298-305.) The ALJ determined that these activities
23 are consistent with the residual functional capacity assessment, which allows for sitting and
24 standing at will and limits Plaintiff to occasional postural maneuvers. (Tr. at 25.) While not
25 alone conclusive on the issue of disability, an ALJ can reasonably consider a claimant's daily
26 activities in evaluating the credibility of his subjective complaints. See, e.g., Stubbs-
27 Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's credibility
28 determination based in part of the claimant's abilities to cook, clean, do laundry, and help her

1   husband with the finances); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005)
2   (upholding ALJ's credibility determination based in part on the claimant's abilities to cook,
3   clean, shop, and handle finances).
4       Next, the ALJ discussed the objective medical evidence noting inconsistencies
5   between Plaintiff's medical records and her reported symptoms and testimony. (Tr. at 25-
6   26); see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008)
7   ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's
8   subjective testimony.") (citation omitted); Batson v. Comm'r of Social Security, 359 F.3d
9   1190, 1197 (9th Cir. 2004) (lack of objective medical evidence supporting claimant's
10  allegations supported ALJ's finding that claimant was not credible). Specifically, the ALJ
11  stated:

> As to her hand pain, the claimant told her orthopedist that she was significantly improved following her carpal time release in May 2010 (inconsistent with hearing testimony). Exhibit 29F, page 1. The very limited capacity found herein, with the manipulative limits, take into consideration her wrist and back symptoms, with due consideration to her weight and diabetes. Her complaints of ongoing back pain are consistent throughout the record, but during her consultative examination with Dr. Young, she was reportedly able to walk without antalgic gait, and without the use of an assistive device. Exhibit 7F, page 4. Additionally, Dr. Young noted adequate muscle in both upper and lower extremities without atrophy, clonus, or fasciculation. *Id*, page 5. At her hearing for benefits, the claimant testified that her pain level averaged 6 to 9/10; however, she reported to treating sources on April 14, 2011, that her pain level was 4/10 with medication. Exhibit 30F, page 3. This is similar to the report she gave him a self-assessment dated November 8, 2010. *Id*, page 15. Of note, the claimant described her level of pain on that day as 1/10. *Id*. On July 2, 2009, the claimant completed a self-assessment, indicating her pain level was approximately 5/10. Exhibit 18F, page 4.

21  (Tr. at 25.) The ALJ continued her discussion of the objective evidence noting additional
22  inconsistencies with Plaintiff's statements. (Tr. at 26.) The ALJ addressed Plaintiff self-
23  described bouts of fatigue, and found that in November 2010, Plaintiff indicated that fatigue
24  was only a minor symptom. (Tr. at 26.) Further, on August 10, 2009, Plaintiff told her
25  treating mental health provider that she was considering attending school or volunteer work
26  because she was looking for something to "fill her day." (Tr. at 26, 727-90.)
27      In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's
28  allegations not entirely credible. While perhaps the individual factors, viewed in isolation,

1 are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor
2 is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors
3 that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision
4 to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,
5 the Court finds no error.[4]

## B.   Medical Source Opinion Evidence

Plaintiff contends that the ALJ erred in finding Plaintiff's psychological impairments to be non-severe and in rejecting the opinion of the treating physician, Maja Everson, M.D.[5]

As to the ALJ's finding Plaintiff's psychological impairments to be non-severe, at the second step of the sequential evaluation process, the medical severity of a claimant's

---

[4] In her opening brief, Plaintiff drops a footnote claiming that the ALJ failed to address the third party report of her sister constituting legal error. In determining whether a claimant is disabled, an ALJ must consider lay witness testimony regarding the claimant's inability to work. See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)). An ALJ cannot disregard lay witness testimony without comment, see Bruce, 557 F.3d at 1115 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so only upon providing specific reasons that are "germane to each witness." Id. (quoting Nyugen, 100 F.3d at 1467); Stout, 454 F.3d at 1054. When an ALJ errs in failing "to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

Here, the ALJ failed to properly discuss lay witness statements. This was legal error. See Bruce, 557 F.3d at 1115. However, the Court concludes that no reasonable ALJ, even if fully crediting the statements, could have reached a different disability determination. The limitations and symptoms contained in Plaintiff's sister's report are entirely similar to and consistent with, those which Plaintiff described in her own testimony. As a result, because the Court concludes that the ALJ's decision to discredit Plaintiff's testimony was supported by substantial evidence, and because Plaintiff's sister's statements were consistent with Plaintiff's testimony, it was reasonable for an ALJ to disregard Plaintiff's sister's statements as well. Therefore, the ALJ's error in disregarding Plaintiff's sister's statements was harmless.

[5] Dr. Maja Everson's opinion is incorrectly cited as the opinion of "Dr. Tonya Evans" in the ALJ's decision. (Tr. at 26.) Plaintiff appears to agree that Dr. Everson's opinion is the opinion being evaluated by the ALJ, and the opinion is correctly identified by exhibit number (e.g., Exhibits 26F, 31F) in the ALJ's decision. (Tr. at 26.)

- 8 -

1  impairments must be considered. See 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or
2  combination of impairments is not severe if it does not significantly limit [the claimant's]
3  physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic
4  work activities" refers to the ability and aptitudes necessary to do most jobs, such as physical
5  functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and
6  remembering simple instructions; use of judgment; responding appropriately to supervision,
7  co-workers and usual work situations; and dealing with changes in a routine work setting.
8  See 20 C.F.R. § 404.1521(b).

9      "The steps outlined in 20 C.F.R. § 404.1520 apply to the evaluation of physical and
10 mental impairments." 20 C.F.R. § 404.1520a(a). In addition, when the severity of mental
11 impairments is evaluated, a special technique is followed. See id. Under the special
12 technique, first it is determined whether the claimant has a medically determinable mental
13 impairment, and then the degree of functional limitation resulting from the impairment(s) is
14 rated. See 20 C.F.R. § 404.1520a(b). Rating the degree of functional limitation is based on
15 the extent to which the claimant's impairment(s) interferes with his ability to function
16 independently, appropriately, effectively, and on a sustained basis. See 20 C.F.R. §
17 404.1520a(c)(2). Section 404.1520a(c) expressly references the Listing of Impairments for
18 information about the factors to be considered in rating the degree of functional limitation.
19 See 20 C.F.R. §§ 404.1520a(c)(2), (3). Citing to 12.00C of the Listing of Impairments, it
20 identifies four broad functional areas in which the degree of functional limitation is to be
21 rated: activities of daily living; social functioning; concentration, persistence, or pace; and
22 episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3). After the degree of
23 functional limitation is rated, then the severity of the claimant's mental impairment(s) is
24 determined. See 20 C.F.R. § 404.1520a(d).

25     Here, the ALJ applied the special technique for evaluating the severity of mental
26 impairments. She found that Plaintiff's medically determinable mental impairments of
27 PTSD, opiate dependence, and major depressive disorder, considered singly and in
28 combination, do not cause more than minimal limitation in Plaintiff's ability to perform basic

1  mental work activities and are therefore nonsevere. She expressly stated, "[i]n making this
2  finding, the undersigned has considered the four broad functional areas set out in the
3  disability regulations for evaluating mental disorders and in section 12.00C of the Listing of
4  Impairments []." The ALJ then explained her findings that support her ratings of mild
5  limitation in the first three functional areas and "no" episodes of decompensation. Citing the
6  regulations governing the special technique for evaluation of mental impairments, the ALJ
7  concluded that Plaintiff's mental impairment is non-severe because it causes no more than
8  mild limitation in any of the first three functional areas and no limitation in the fourth area.
9  Therefore, the Court finds no error.

10  Regarding the ALJ's rejection of the Dr. Everson's opinion, "[t]he ALJ is responsible
11 for resolving conflicts in the medical record." Carmickle, 533 F.3d at 1164. Such conflicts
12 may arise between a treating physician's medical opinion and other evidence in the
13 claimant's record. In weighing medical source opinions in Social Security cases, the Ninth
14 Circuit distinguishes among three types of physicians: (1) treating physicians, who actually
15 treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and
16 (3) non-examining physicians, who neither treat nor examine the claimant. See Lester, 81
17 F.3d at 830. Generally, more weight should be given to the opinion of a treating physician
18 than to the opinions of non-treating physicians. See id. Where a treating physician's opinion
19 is not contradicted by another physician, it may be rejected only for "clear and convincing"
20 reasons, and where it is contradicted, it may not be rejected without "specific and legitimate
21 reasons" supported by substantial evidence in the record. See id. Moreover, the
22 Commissioner must give weight to the treating physician's subjective judgments in addition
23 to his clinical findings and interpretation of test results. See id. at 832-33.

24  The opinion of a non-examining physician is not itself substantial evidence that
25 justifies the rejection of the opinion of either a treating physician or an examining physician.
26 See id. at 831. "The opinions of non-treating or non-examining physicians may also serve
27 as substantial evidence when the opinions are consistent with independent clinical findings
28 or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

1  Factors that an ALJ may consider when evaluating any medical opinion include "the amount
2  of relevant evidence that supports the opinion and the quality of the explanation provided;
3  the consistency of the medical opinion with the record as a whole; [and] the specialty of the
4  physician providing the opinion."  Orn, 495 F.3d at 631.

5        Plaintiff argues that the ALJ erred in giving "little weight" to Dr. Everson's opinion
6  on Plaintiff's work related functional limitations.  Since Dr. Everson's opinion was
7  ultimately contradicted by consultative and reviewing physicians, as well as, the medical
8  evidence of record, the specific and legitimate standard applies.  (Tr. at 21-22, 26.)

9        Historically, the courts have recognized the following as specific, legitimate reasons
10  for disregarding a treating or examining physician's opinion: conflicting medical evidence;
11  the absence of regular medical treatment during the alleged period of disability; the lack of
12  medical support for doctors' reports based substantially on a claimant's subjective complaints
13  of pain; and medical opinions that are brief, conclusory, and inadequately supported by
14  medical evidence.  See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten
15  v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair, 885
16  F.2d at 604.  Here, the Court finds that the ALJ properly gave specific and legitimate reasons,
17  based on substantial evidence in the record, for discounting Dr. Everson's opinion.

18        According to the record, Plaintiff was seen at Southwest Behavioral Health from late
19  2007 through 2010.  In late 2007 and early 2008, Plaintiff was diagnosed with opiate
20  dependency, depression and/or dysthymia (chronic depression with less severe but
21  longer-lasting symptoms).  (Tr. at 424, 418-21.)  She was prescribed psychiatric medication.
22  (Tr. at 418-21.)  However, the main focus of her care was recovery from drug addiction and
23  to prescribe methadone.  (Tr. at 424, 418.)  Plaintiff was seen every few months in 2008 to
24  refill her psychiatric medication and to receive counseling, particularly with respect to her
25  addiction.  (Tr. at 422, 417, 428-29, 415, 427, 414, 412, 426, 625, 624, 620.)

26        In February 2009, as part of the administrative proceedings, Elliot Salk, Ph.D.,
27  evaluated Plaintiff.  (Tr. at 554-59.)  Plaintiff reported engaging in a wide range of daily
28  activities, including: going to the methadone clinic three days per week; making sure her

1 teenager goes to school; cleaning house; helping her daughter with her baby; cooking (simple 2 meals); laundry (four loads per week with help carrying); going on walks; attending 3 appointments four to five times per month; grocery shopping twice per week; and playing 4 with grandchildren. (Tr. at 556-57.) In her mental status exam, Plaintiff recalled three of 5 three objects immediately and two of three after three minutes, counted backward from 20 6 by threes, spelled "world" backwards, performed correct calculations, and made logical 7 associations. (Tr. at 557-58.) Plaintiff said she attended Southwest Behavioral Health for 8 drug counseling. (Tr. at 556.) Dr. Salk opined that Plaintiff's presentation was consistent 9 with depression and anxiety, but that she was oriented times three, her memory was intact, 10 and her concentration, persistence, and pace were normal. (Tr. at 558.) Dr. Salk diagnosed 11 mood disorder, non-specific, and opiod dependence in remission. (Tr. at 558.) Dr. Salk 12 opined that Plaintiff had no restriction in activities of daily living, no difficulties in 13 maintaining social functioning, no difficulties in maintaining concentration, persistence, and 14 pace, and no episodes of decompensation. (Tr. at 560-61.)

15 In February 2009, also as part of the administrative proceedings, Mary Downs, Ph.D., 16 reviewed Plaintiff's records. (Tr. at 562-75.) Dr. Downs diagnosed affective disorder and 17 substance addiction disorder but found that both were non-severe. (Tr. at 562.) Dr. Downs 18 similarly opined that Plaintiff did not have functional limitations. (Tr. at 572.)

19 Plaintiff was seen at Southwest Behavioral Health every few months for the remainder 20 of 2009, largely for drug counseling and psychiatric medication refills. (Tr. at 757, 759, 752, 21 754, 750, 746.) In August 2009, Plaintiff said she was looking for something to "fill her 22 day," such as school classes or volunteering, and that she was caring for her granddaughter. 23 (Tr. at 740.) Plaintiff continued her treatment in 2010. (Tr. at 731,736, 801, 727, 833.)

24 In February 2011, psychiatrist Dr. Everson completed a check-box form assessing 25 Plaintiff's mental functioning. (Tr. at 881-82.) Dr. Everson opined that Plaintiff was mildly 26 to moderately limited in a few areas, but that she was moderately severely limited in six areas 27 and severely limited in three areas. (Tr. at 881-82.)

28

1    In her evaluation of Dr. Everson's opinion, the ALJ found multiple inconsistencies
2 between Dr. Everson's assessment and the other evidence of record. Specifically, the ALJ
3 stated:

> the undersigned finds Dr. [Everson's] assessment of the claimant's work related functional capacity is inconsistent with contemporary treatment notes accompanying the assessment. It is also inconsistent with the claimant's self-report of activities of daily living and her level of functioning evidenced at her hearing for benefits. During her hearing, she was articulate and followed the proceedings well. Accordingly, the undersigned affords little weight to Dr. [Everson's] opinions on the claimant's work related functional limitations.

(Tr. at 26.)   Therefore, the Court finds no error.  See 20 C.F.R. § 404.1527(c)(4) (Consistency of medical opinion with the record as a whole is one of several factors considered in deciding the weight to give to any medical opinion); see also Magallanes, 881 F.2d at 754 (Conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion in favor of that offered by non-treating, non-examining physician); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that [the physician's] extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes. Nowhere do his notes indicate reasons why [the physician would limit the claimant to a particular level of exertion]."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected a physician's testimony because "it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions").

**C.    Function-by-Function Assessment and Vocational Expert's Testimony**

Plaintiff argues that the ALJ erred in failing to provide a function-by-function assessment of the residual functional capacity. In addition, Plaintiff contends that the ALJ erred in accepting testimony from the vocational expert stating that Plaintiff could perform the positions of cashier, assembly worker, and quality control inspector.

1    Plaintiff first alleges that the ALJ erred by failing to set forth a function-by-function
2 assessment of her residual functional capacity resulting in legal error. Specifically, Plaintiff
3 states that the ALJ assessed a residual functional capacity for "sedentary" work, without
4 specifying the length of time she can sit, stand or walk (at one time or in total); and without
5 specifying the weight she can lift and carry. Plaintiff states that the ALJ did not explain why
6 she found her capable of frequent handling, as opposed to "occasional" (which would
7 preclude all work) and did not specify the frequency of required position changes. Defendant
8 does not dispute that the ALJ did not set forth a function-by-function assessment, but argues
9 instead that function-by-function assessments are not always necessary.

10   Social Security Ruling 96-8p sets forth the policies regarding the assessment of a
11 claimant's residual functional capacity. However, "[t]he ALJ is not required, as [Plaintiff]
12 contends, to engage in a function-by-function analysis under SSR 96-8p. SSR 96-8p requires
13 only that the ALJ discuss how evidence supports the residual function capacity assessment
14 and explain how the ALJ resolved material inconsistencies or ambiguities in evidence ... ."
15 Mason v. Comm'r of Soc. Sec., 379 F.App'x 638, 639 (9th Cir. 2010). Accordingly,
16 Plaintiff's argument is unfounded.

17   In support of the residual functional capacity assessment, the ALJ discussed a wide
18 range of medical evidence and witness testimony. (Tr. at 23-26.) The ALJ appropriately
19 addressed Plaintiff's credibility by discussing the objective evidence and Plaintiff's daily
20 activities. Further, as to the objective medical evidence, the ALJ identified which medical
21 evidence was compelling and accorded it appropriate weight, and also identified the medical
22 evidence that was less compelling, explained why it was less compelling, and accorded it
23 little weight. The ALJ provided ample explanations as to how the medical evidence
24 supported her residual functional capacity assessment and how she resolved inconsistencies
25 in the evidence. (Tr. at 23-26.) The ALJ ultimately found that Plaintiff retained "the residual
26 functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and
27 416.967(a) except that she can occasionally climb ramps and stairs, balance, stoop, kneel,
28 crouch, crawl; and should never climb ladders, ropes, or scaffolds. She is limited to frequent

1 handling and precluded from forceful gripping or grasping.  The claimant would require a
2 sit/stand option at will."  The Court concludes that the ALJ's residual functional capacity
3 assessment meets the burden imposed by SSR 96-8p and is supported by substantial
4 evidence.

5       Plaintiff next argues that the ALJ erred in accepting testimony from the vocational
6 expert stating that Plaintiff could perform the positions of cashier, assembly worker, and
7 quality control inspector.

8       At step five, the Commissioner has the burden of demonstrating that the claimant can
9 perform some work that exists in "significant numbers" in the national or regional economy,
10 taking into account the claimant's residual functional capacity, age, education, and work
11 experience.  See Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); 42 U.S.C. §
12 423(d)(2)(A); 20 C.F.R. § 404.1560(c).  The Commissioner may satisfy that burden either
13 through the testimony of a vocational expert or by reference to the Medical-Vocational
14 Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2.  See Tackett, 180 F.3d
15 at 1100-01; see also Hill v. Astrue, 638 F.3d 1144, 1152 (9th Cir. 2012) ("The ALJ may meet
16 his burden at step five by asking a vocational expert a hypothetical question based on medical
17 assumptions supported by substantial evidence in the record and reflecting all the claimant's
18 limitations, both physical and mental, supported by the record.").  "If a vocational expert's
19 hypothetical does not reflect all the claimant's limitations, then the expert's testimony has
20 no evidentiary value to support a finding that the claimant can perform jobs in the national
21 economy."  Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).

22       At the hearing, the ALJ asked vocational expert George Bluth whether jobs exist in
23 the national economy for an individual with Plaintiff's age, education, work experience, and
24 residual functional capacity.  (Tr. at 27, 71-82.)  The vocational expert testified that "given
25 all of these factors the individual would be able to perform the requirements of representative
26 occupations such as a cashier 211.462-026 (8,000 jobs in Arizona; 2 million nationally);
27 assembly worker, DOT code 726.685-066 (6,000 jobs in Arizona; 1.5 million nationally);
28 and quality control inspector, DOT code 726.684-050 (4,000 jobs in Arizona; 800,000 jobs

- 15 -

nationally)." (Tr. at 27, 71-82.) In her decision, the ALJ noted that the vocational expert's testimony was "mostly consistent" with the information contained in the Dictionary of Occupational Titles ("DOT"). However, the ALJ stated that although the DOT failed to discuss a sit-stand option, in testifying regarding this specific restriction, the vocational expert relied on his direct observation of these types of jobs. (Tr. at 27.)

The ALJ accepted the vocational expert's testimony and determined that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. at 27-28.) Thus, the Court finds that the ALJ's decision at step five is supported by substantial evidence and her reliance on the vocational expert's testimony does not constitute legal error.

## V.  CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits and supplemental security income in this case. Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 24th day of March, 2014.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge